# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**

   v.                                          **Case No. 07-CR-85**

**MIGUEL RUIZ**
        **Defendant.**

---

## SENTENCING MEMORANDUM

A jury convicted defendant Miguel Ruiz of possessing a short-barreled shotgun, contrary to 26 U.S.C. § 5861. The pre-sentence report ("PSR") set defendant's offense level at 20 (base level 18, U.S.S.G. § 2K2.1(a)(5), plus 2 for obstruction of justice based on his commission of perjury at trial, U.S.S.G. § 3C1.1) and his criminal history category at IV, producing an imprisonment range of 51-63 months under the advisory sentencing guidelines. Neither side objected to the PSR's guideline calculations, which I found to be correct and adopted. Then, upon consideration of all of the factors set forth in 18 U.S.C. § 3553(a), I imposed a sentence of 45 months' imprisonment. See United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007) ("Post-Booker a district court must engage in a two-part sentencing procedure: (1) properly calculate the guidelines sentence; and (2) consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to arrive at a reasonable sentence.").

**I.**

Section 3553(a) directs the sentencing court to consider:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

> (2) the need for the sentence imposed–
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the advisory guideline range;
>
> (5) any pertinent policy statements issued by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the court must impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing, which are just punishment, deterrence, protection of the public and rehabilitation of the defendant. Id. In making this determination, the district court may not presume that the guideline sentence is the correct one or elevate the guidelines above the other factors in the statute. See, e.g., United States v. Schmitt, 495 F.3d 860, 864-65 (7th Cir. 2007); United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007); United States v. Demaree, 459 F.3d 791, 794-95 (7th Cir. 2006), cert. denied, 127 S. Ct. 3055 (2007). Rather, it is the statute's "parsimony provision that serves as 'the guidepost for sentencing decisions post-Booker.'" United States v. Santoya, 493 F. Supp. 2d 1075, 1077 (E.D. Wis. 2007) (quoting United States v. Ferguson, 456 F.3d 660, 667 (6th Cir. 2006)).

2

**II.**

Police officers came to defendant's house to arrest him in connection with a recklessly endangering safety charge.[1] His parents answered the door, and one of the officers heard noises in the back hall, from which defendant emerged. Officers entered and arrested defendant, then searched the back hall area, recovering a short-barreled shotgun and a cleaning kit that had defendant's fingerprints on it. In a post-arrest statement, defendant said that he possessed the shotgun for protection.[2]

The crime was serious because these types of weapons are particularly dangerous. This was also a serious matter because of defendant's prior record.[3] He had a juvenile adjudication for possession of a dangerous weapon and an adult conviction for carrying a concealed weapon. He also had adult convictions for obstructing an officer and disorderly conduct, the latter arising out of a violent incident with his girlfriend. He dropped out of high school, the PSR reported that he associated with the Latin Kings street gang, and at the time of sentencing he faced RICO charges in a Latin King prosecution being handled by another judge in this district.

However, all of defendant's prior convictions occurred between 2000 and 2003, and the instant offense occurred in July 2003.[4] Since then, it appeared that defendant had done better. At the time of sentencing, he was twenty-three years old, and he had no law enforcement

---

[1] The State later decided not to pursue this charge against defendant.

[2] I found that defendant obstructed justice under U.S.S.G. § 3C1.1 by denying this statement during his trial testimony.

[3] Defendant's false trial testimony was also an aggravating factor.

[4] The charges in the RICO case also arose prior to 2003.

3

contacts in the past four years. The father of two small children, ages six and two, he seemed to be heavily involved in their lives. I received numerous letters about the improvements defendant had made in his life over the past four years, including from a youth advisor at the Latino Community Center and the executive director of the Milwaukee Violence Free Zone, defendant's girlfriend and her parents, and his cousin and parents. Numerous supporters appeared at defendant's sentencing.

Defendant also had a decent employment record, working steadily in a meat factory before being remanded in this case. He reported past abuse of marijuana and alcohol but stated that he stopped in 2005; all thirty-six of his drug screens on pre-trial release were negative, which corroborated his statement.

The guidelines recommended 51-63 months in this case. I agreed that a significant period of confinement in prison was needed to provide just punishment, given the seriousness of the crime. See 18 U.S.C. § 3553(a)(2)(A). However, I concluded that a term slightly below the range was sufficient to satisfy all of the purposes of sentencing, given defendant's recent progress. Based on the letters, his lack of law enforcement contacts and other good behavior over the last four years, it appeared that the danger defendant may have once presented to the public had diminished, as had his risk of re-offending.[5] See 18 U.S.C. § 3553(a)(2)(B) & (C).

I further concluded that criminal history category IV overstated the severity of

---

[5] The government argued that defendant's lack of contacts could be attributed to the fact that he was under indictment in the RICO case from 2005 on and thus was subject to close monitoring. That monitoring may have played some role in his good behavior, but the record suggested more at work than that. Further, it is not uncommon for defendants to continue violating the law even when released on bond and subject to pre-trial supervision.

4

defendant's record. See U.S.S.G. § 4A1.3(b). Defendant had no prior felony convictions, only misdemeanors and a scored juvenile adjudication. Most category IV offenders have at least one prior felony. Defendant reached category IV based only on the inclusion of 2 points under U.S.S.G. § 4A1.1(e) because he committed the instant offense about eighteen months after his release from a jail sentence exceeding 60 days. And, as discussed, defendant had maintained a perfectly clean record over the four years preceding sentencing in this case.

Finally, I noted that defendant had never done more than 5 months in the county jail on any previous sentence. Thus, any prison term I imposed in this case represented a significant increase for him. Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who had already done serious time yet continued to re-offend. United States v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005).[6]

### III.

Under all of the circumstances, I found a sentence of 45 months sufficient but not greater than necessary. This sentence varied modestly from the guidelines, was based on the particular facts of the case and found support in policy statement 4A1.3, see 18 U.S.C. § 3553(a)(5), so it did not create any unwarranted disparity, 18 U.S.C. § 3553(a)(6).

Therefore, I committed defendant to the custody of the Bureau of Prisons for 45 months. I recommended that he be placed at an institution as close to Milwaukee as possible and participate in any GED or HSED classes available. Upon release, I placed him on supervised

---

[6] I did not see any current correctional treatment needs, aside from defendant getting his GED. See 18 U.S.C. § 3553(a)(2)(D). I did include a drug testing and treatment condition as part of his supervised release to ensure that he maintained sobriety.

5

release for three years, with a drug aftercare and other conditions that appear in the judgment.

Dated at Milwaukee, Wisconsin, this 17th day of November, 2007.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge